# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CARLOS DIAZ and MYRNA DIAZ,

        Plaintiffs,

vs.                                                   CIV No. 00-577 JC/RLP

SECOND JUDICIAL DISTRICT COURT, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment on Qualified Immunity and to Stay Discovery, filed July 5, 2002 (*Doc. 99*).[1] Having reviewed the motion, the memoranda and all relevant legal authorities, the Court finds Defendants' summary judgment motion on qualified immunity well taken, and it is, therefore, granted.[2]

**I.**     **Background**

Carlos Diaz, a black Cuban-American, was involved in a fight with approximately 20 Hispanic

---

[1] Pursuant to FED. R. CIV. P. 72(a), this Court will refer the issue of staying discovery to the assigned Magistrate Judge.

[2] The Court notes that Defendants included the Albuquerque Police Department (APD) as a defendant. On August 1, 2001, this Court dismissed the APD as a defendant and ordered Plaintiffs to substitute the City of Albuquerque in all further proceedings. Memorandum Opinion and Order, 00cv700, filed August 1, 2001 (*Doc. 75*). Plaintiffs subsequently added the City of Albuquerque, yet their caption still erroneously includes the APD as a defendant.
      Even if the Court were to substitute the City of Albuquerque for the APD in this motion, it is well settled that institutional entities cannot assert the defense of qualified immunity, as institutional entities, unlike individual officials, do not enjoy the right to invoke qualified immunity. *Munafo v. Metropolitan Transp. Auth.,* 285 F.3d 201, 214-15 (2nd Cir. 2002); *Owen v. City of Independence*, 445 U.S. 622, 638,(1980); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir.1993) (The "defense[ ] of ... qualified immunity ... [does] not belong to the governmental entity, and the entity itself is not allowed to assert [it]."). The Court, therefore, only will review this motion regarding the individual Defendants.

males on June 18, 1997, in front of his mother's mobile home in Albuquerque, New Mexico.[3] During the fight, Plaintiff Myrna Diaz, Carlos' sister, pointed a gun, presumably at the group, but Carlos took it from her. Pls' Resp., Ex. 2, 55:1-4. Shots were fired soon thereafter, wounding Isabelle Ledezma in the head. After the shooting, Carlos entered the mobile home yet fled out the rear door.

Responding to a 911 call reporting a shooting, Defendant Officers arrived at the trailer park and observed the victim with a gunshot wound to his head. Several witnesses advised Defendants Baca and Sholtis that Carlos Diaz was the shooter while another witness informed Defendant Sholtis that Carlos had "left the scene in an unknown direction." Reply to Pls' Resp. to Dfs' Motion for Summary Judgment on Qualified Immunity (Dfs' Reply), filed July 5, 2002, Ex. B (*Doc. 103*); Pls' Resp., Ex. 11. At the scene, officers arrested Myrna Diaz after witnesses reported that Carlos had obtained the gun from her. Police never recovered the gun.

The next day, Defendant McGrath, while observing the mobile home park in question, saw a grey van pulling out of the parking lot with a male fitting the description of Carlos in the passenger seat. The van headed east, away from the city and from the nearest police substation. Defendant McGrath radioed for a marked unit to stop the van, as he was in an unmarked car. Upon identification of the occupants, the passenger was identified as Carlos Diaz and the driver as his brother, Gilbert Diaz. Although the brothers were headed away from the police substation, when questioned Gilbert was unable to justify the reasons behind their direction.[4] Police searched and then impounded the van

---

[3] Plaintiff asserts that the Hispanics against whom he fought were not his neighbors but a gang. Pl. Mem. in Support of Resp. to Dfs' Motion for Summary Judgment on Qualified Immunity (Pls' Resp.), filed July 5, 2002 at 4 (*Doc. 101*). Plaintiff, however, produced the deposition transcript of Isabelle Ledezma, the victim of the gun shot, who stated that he and his family were neighbors of Carlos Diaz, his mother and sister in the mobile home park where the fight occurred. Pls' Resp., Ex. 7,19:1-22.

[4] This specific fact is not in the record for the present case. The Court, however, takes judicial notice of the fact from prior litigation in a similar suit. St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp., 605

and arrested Carlos and his brother.

At the criminal trial against Carlos, the jury acquitted him of aggravated battery against Ledezma.

## II.     **Standard of Review**

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). To overcome summary judgment, "the movant need only to point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 674 (10th Cir. 2002). The Court will grant summary judgment "if the movant establishes entitlement to judgment as a matter of law given [the] uncontroverted, operative facts.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). Conclusory allegations made by a non-movant are not sufficient. *Diaz* 289 F.3d at 675. Instead, pertinent evidence must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein. *Id.*

## III.    **Analysis**

---

F.2d 1169, 1172 (10th Cir.1979) (citing Duhart v. Carlson, 469 F.2d 471 (10th Cir. 1972) (Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it.).

Qualified immunity must be resolved at the earliest possible moment, for it shields government officials from liability under 42 U.S.C. § 1983 and the weighty litigation that could detract from the future performance of their duties. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). This defense "protects all but the plainly incompetent or those who knowingly violate the law." *Id*. (citation omitted). Upon a defendant's assertion of qualified immunity at the summary judgment stage, a plaintiff must meet a heavy two-part burden and demonstrate that: (1) officers violated plaintiff's constitutional or statutory right, and (2) the right was clearly established at the time of the alleged conduct. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998). Only if the plaintiff clearly establishes that he satisfied his two-part burden must the defendant demonstrate that "there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Medina,* 252 F.3d at 1128.

The basis behind qualified immunity is to ensure that officers, at the time of their conduct, are on notice that it is unlawful. *Saucier v. Katz*, 533 U.S. 194, 206 (2001). The Supreme Court, however, held that sufficient notice does not entail specific court rulings on specific actions. *United States v. Lanier*, 520 U.S. 259, 269 (1997) The contours of the right, however,

> must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful...(citation omitted) but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Hope v. Pelzer*, 122 S. Ct. 2508, 2515 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In this case, therefore, if Plaintiffs meet the first prong, the next question is thus: whether at the time of the incident the law provided Defendants fair warning that they did not have sufficient probable

cause to arrest Carlos or Myrna. Plaintiffs, however, fail to demonstrate that Defendants violated their constitutional rights, and thus do not meet the first prong of the test.

Probable cause

Plaintiffs assert unreasonable seizure under the Fourth Amendment due to lack of probable cause when Defendants arrested Carlos and Myrna. Plaintiffs further claim that qualified immunity is not applicable to Fourth Amendment violations. Pls' Resp. at 18. This latter claim, however, is inapposite to settled law, as the Supreme Court in *Katz* reiterated that qualified immunity is applicable to Fourth Amendment claims "just as it would for any other official misconduct claim." 533 U.S. at 203.

Probable cause exists "if facts and circumstances within the arresting officer's knowledge and of which he or she has *reasonably trustworthy* information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Baptiste*, 147 F.3d at 1256. Therefore, when a claimant in a § 1983 suit asserts that officers did not have probable cause to arrest him without a warrant:

> the defendant arresting officer is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff. Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to qualified immunity.

*Id.* (citations omitted).

Plaintiffs' claims that Defendants did not have probable cause to arrest are untenable in light of the facts before this Court. Upon responding to a 911 call claiming that a shooting occurred, Defendants observed the victim with a gunshot wound to the head. Pls' Resp., Ex. 11. Defendants Baca and Sholtis then spoke with various witnesses who told them that Carlos was the shooter and

that he fled the scene. Dfs' Reply, Ex. B; Pls' Resp., Ex. 11. Baca also interviewed another witness who said he had observed the entire incident. Pls' Resp. Ex. 11. The witness said he heard a Cuban male shout, "You hit my "****ing mom," and then a gunshot. *Id.* The witness also reported that he saw the victim holding his head saying "I'm shot." *Id.* Upon further questioning, other witnesses said that Myrna gave Carlos a gun.[5] Pls' Resp., Ex. 12. When Defendant Sholtis specifically asked Myrna whether she handed the gun to Carlos she nodded affirmatively and said, "yeah, I did." *Id.* Due to this information, officers subsequently arrested her.

The information obtained by Defendant Officers on June 18 and Officer McGrath's determination that the passenger in the van going away from the city and the police station fit Carlos' description, is sufficient for a reasonable officer to believe that probable cause existed to arrest both Carlos and Myrna. Under Tenth Circuit precedent, courts must look at the "totality of the circumstances" when evaluating whether officers had probable cause for a warrantless arrest. *Baptiste*, 147 F.3d at 1259. The use of witnesses is a key factor in determining probable cause, however, "[w]hile officers may weigh the credibility of witnesses in making a probable cause determination, they may not ignore *available and undisputed* facts." *Id.* In this case, however, Plaintiffs do not provide the Court with any evidence via memorandum, exhibits, affidavits, or depositions that the officers purposefully ignored any facts. Defendant Officers thus had probable

---

[5] There is dispute whether Myrna gave the gun to Carlos or whether he took it from her. This issue is irrelevant to the question of probable cause. It is relevant, however, that in Plaintiffs' First Amended Complaint and deposition testimony, Plaintiffs acknowledge that Myrna pointed the gun at the Hispanic males. Pls' First Amended Compl., filed Dec. 4, 2001 at 4 (*Doc. 52*)("Mryna Diaz, sister of Carlos, fearing for their lives, emerged from the home of her mother with a .357 revolver and pointed it at the attackers."); Pls' Resp. Ex. 2, 37:4-6. The parties dispute whether the gun was a .357 or a smaller caliber gun. According to witnesses, a small gun was used to shoot the victim. Officers, however, never located the weapon used in the shooting. Yet, the caliber of the gun is not relevant to a determination of probable cause, for Plaintiffs do not provide the Court with evidence that a reasonable officer at the scene should have known that Carlos only had a .357.

cause to arrest Myrna and Carlos based on a reasonable belief that Plaintiffs committed a crime.

Plaintiffs also claim that their Fourth Amendment rights were violated due to their "detention that lasted four years as Plaintiffs carried the burden of criminal charges...." Pls' Resp. at 16. They, however, fail to cite any legal authority supporting this assertion, so this Court will not entertain this claim further. *Primas v. City of Okla. City*, 958 F.2d 1506, 1511 (10th Cir. 1992) (holding that a party must cite to authority for any argument raised).

Malicious intent and racial discrimination

Plaintiffs allege that their arrest and the handling of their case by Defendants is shrouded by a veil of malicious intent and racial discrimination. Pls' Resp. at 19-23. Plaintiffs assert that Defendants arrested them solely because they are black Cuban-Americans. *Id.* at 20. Plaintiffs further claim that qualified immunity is "illogical in the context of brightline constitutional rules involving intentional misconduct by public officials."*Id.* at 18. Such assertion, however, runs afoul of the Supreme Court's refusal to hear Fourth Amendment challenges based on intent. *United States v. Knight*, 122 U.S. 587, 593 (2001)("[W]e have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers...." quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)). Plaintiffs' allegations of malice thus cannot overcome Defendants' assertion of qualified immunity.

Plaintiffs further claim, without any citation to authority, that their arrests were motivated by racial animus. It is settled law that intentional discrimination by police violates a plaintiff's right to equal protection. *Stewart v. City and County of Denver*, 204 F.3d 836, 2000 WL 130703 *2 (10th Cir. Feb. 4, 2000)(unpublished disposition). Yet, as two contrasting cases demonstrate, Plaintiffs' factual allegations do not constitute a violation of the law. In *Ford v. Wilson,* 90 F.3d 245, 248 (7th

Cir. 1996), Judge Posner found no racial discrimination where the plaintiff's sole assertion was that his arrest was due to his race. In contrast, the Ninth Circuit found a Fourth Amendment violation and denied officers qualified immunity because the plaintiffs asserted sufficient specific facts demonstrating that defendants falsified their reasons for arrest. *Price v. Kramer*, 200 F.3d 1237, 2000 WL 14442, *6 (9th Cir. 2000).

In the present case, Plaintiffs fail to demonstrate that Defendants fabricated the information at the scene in order to achieve an arrest. Their only evidence rests on bald assertions that Defendants' behavior was motivated by racial animus. Plaintiffs' claims include: (1) Defendant McGrath entering Plaintiffs' mother's home and "screaming like a wild man;"[6] (2) Defendant Sholtis saying, "****ing Cubans" within earshot of Myrna; (3) Defendant McGrath trumping up charges against Myrna; (4) officers referring to the Diaz' as "damn Cubans;" (5) at the time of Carlos' arrest, Defendant McGrath telling Carlos and Gilbert, "I should take out my gun and shoot both you and your brother." Pls' Resp. at 21-23. Unlike the plaintiffs in *Price*, Plaintiffs' allegations do not rise to the level of racial prejudice, as the alleged statements and actions do not demonstrate that the officers fabricated their reasons for arrest. Specifically, Plaintiffs fail to support their assertion of falsification of a police report with any admissible evidence.

Furthermore, police conduct under the Fourth Amendment is judged under the standards of reasonableness. *Katz*, 533 U.S. at 199-200. The three incidents of alleged derogatory comments are not sufficiently severe or pervasive to be deemed unreasonable under the Fourth Amendment. Also, even if Defendants' statements and alleged actions could be construed as unreasonable, Plaintiffs fail

---

[6]Because Plaintiffs' mother is not a party to this suit, Plaintiffs' first allegation against Defendant McGrath is not considered in this decision.

to cite to any authority that Defendants should have been aware that these isolated incidents violated the Fourth Amendment as of June 19, 1997.

Finally, Plaintiffs unreasonably assert that Officer McGrath purposefully failed to recollect the incidents of July 18 and 19, 1997, considering the intervening years and Plaintiffs' refusal to allow him to review the police reports. Pls' Resp., Ex. 9, 145:7-15. Plaintiffs also do not demonstrate that Defendant Baca's statement before Judge Parker on October 18, 2000, was anything more than a mistaken recollection.

<u>Plaintiffs' other claims</u>

The complaint asserts multiple other constitutional and statutory violations. Plaintiffs abandoned these claims, however, for they failed to address them upon Defendants' motion for summary judgment.[7] *Imperial v. Suburban Hosp. Ass'n.*, 37 F.3d 1026, 1031 (4th Cir. 1994)(holding that if a plaintiff fails to make any "overture to the district court to suggest that he had a continuing interest in pursuing [a claim] which would survive the immunity defense" the claim has been abandoned.).

## IV. <u>Conclusion</u>

Defendants are entitled to qualified immunity, for Plaintiffs fail to meet their two-part burden.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment on Qualified Immunity and to Stay Discovery, filed July 5, 2002 (*Doc. 99*) is GRANTED regarding summary judgment.

---

[7] Plaintiffs claims include violations of 42 U.S.C. §§ 1983, 1985, 1986, violations of the VI, V, VI, VIII, IX, X, XIII, XIV Amendments to the United States Constitution, malicious prosecution, fraud and fraud through concealment of facts, conspiracy to commit actionable causes of constitutional rights violations, fraud and fraud through concealment of facts, and City of Albuquerque, New Mexico policy caused a constitutional tort. Pls' First Amended Comp.

Dated August 26, 2002.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Attorney for Plaintiffs:

    Stephen McIlvain, Esq.
    Albuquerque, New Mexico

Attorney for Defendant McGrath:

    Kenneth C. Downes, Esq.
    Albuquerque, New Mexico

Attorney for City of Albuquerque and APD Officers:

    Kathryn Levy, DA
    Albuquerque, New Mexico